## IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANTHONY LABARGE, | CIVIL ACTION |
| Plaintiff, | No. _____ |
| v. | |
| THE CITY OF PHILADELPHIA, | JURY TRIAL DEMANDED |
| Defendant. | |

## COMPLAINT

1.      Plaintiff Anthony LaBarge ("Plaintiff") brings this action against the City of Philadelphia ("the City" or "Defendant") for violations of the Fourth and Fourteenth Amendments to the United States Constitution pursuant to 42 U.S.C. § 1983. Plaintiff seeks monetary damages and declaratory and injunctive relief.

## INTRODUCTION

2.      This action arises from the City of Philadelphia's policies, customs, and practices concerning the City-authorized towing, relocation, and removal of private vehicles. Through a defective patchwork of written and unwritten policies, procedures, and customs, the City routinely causes vehicles to be seized, relocated, misplaced, and effectively lost to their owners. The City has been aware of these systemic deficiencies for years, yet continued and continues to operate the same unconstitutional practices that predictably result in vehicle owners and operators being unable to locate and recover their vehicle.

3.      Plaintiff Anthony LaBarge is one vehicle owner the City's towing practices harmed. On or about July 22, 2025, after a motor vehicle incident where Mr. LaBarge was taken to the

1

hospital by ambulance, the Philadelphia Police Department authorized a rotational tow of his vehicle, which was seized and removed under City authority. The City then failed to track where it had relocated his vehicle. The City's own records reflect that the vehicle was "towed by rotational tow," was "not in tow file," and that it is "unknown where vehicle currently is." (Exhibit "A"). To this day, Mr. LaBarge's vehicle has never been returned.

4.      The lost vehicle was Mr. LaBarge's most valuable personal asset, acquired through a modest inheritance he received following his father's unexpected death, and he has been financially unable to replace it. The City's deprivation of his vehicle has caused substantial and ongoing hardship, including financial harm, loss of mobility, an inability to obtain and maintain employment, interference with necessary medical treatment, disruption of activities essential to managing his health conditions, and significant disturbance to his daily life.

5.      Plaintiff brings this action under 42 U.S.C. § 1983. The City's seizure and prolonged deprivation of vehicles without adequate safeguards to track, locate, and return them constitutes an unreasonable seizure in violation of the Fourth Amendment. Its failure to provide constitutionally adequate notice and meaningful post-deprivation procedures concerning the seizure, location, custody, and recovery of those vehicles deprives owners of their property without due process in violation of the Fourteenth Amendment.

6.      Plaintiff brings this action individually and seeks compensatory damages together with declaratory and injunctive relief sufficient to remedy the City's unconstitutional practices and prevent their recurrence.

7.      The U.S. District Court for the Eastern District of Pennsylvania has already allowed materially identical Fourth and Fourteenth Amendment claims to proceed against the City's towing and vehicle relocation program, denying the City's motions to dismiss and for summary judgment,

and in February 2026 the City entered a settlement agreeing to pay affected drivers named as plaintiffs and to implement systemic reforms. Yet the City has not compensated Plaintiff or others like him who suffered the same harms, and, upon information and belief, it continues to seize and lose vehicles without having enacted adequate safeguards.

## JURISDICTION AND VENUE

8.      This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1343 because this action arises under the Constitution and laws of the United States.

9.      Plaintiff's claims arise pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988.

10.     This Court has supplemental jurisdiction over any state law claims pursuant to 28 U.S.C. § 1367.

11.     Venue is proper in this District under 28 U.S.C. § 1391 because Defendant resides in this District and the events giving rise to the claims occurred in this District.

## PARTIES

12.     Plaintiff Anthony LaBarge is an adult individual residing in New Jersey.

13.     Defendant City of Philadelphia is a municipal entity organized under the laws of the Commonwealth of Pennsylvania and is capable of being sued.

14.     At all relevant times, Defendant acted through its agencies, departments, officers, employees, contractors, agents, and authorized towing operators acting under color of state law.

15.     The Philadelphia Police Department is an agency of the City of Philadelphia responsible for law enforcement and administration of police-directed towing, rotational towing, and related vehicle seizure practices.

16.     The City implemented, authorized, maintained, supervised, ratified, tolerated, or was deliberately indifferent to the policies, customs, practices, and failures alleged herein.

3

## FACTUAL ALLEGATIONS

**A.      The City's Vehicle Relocation Program**

17.      The City of Philadelphia operates a municipal Vehicle Relocation Program through which the City, the Philadelphia Police Department, City contractors, and authorized private towing operators seize, tow, move, relocate, impound, or otherwise exercise control over private vehicles.

18.      The City uses this program for asserted public purposes including accident response, roadway clearance, traffic management, public safety, construction access, event management, temporary no-parking enforcement, and other municipal operations.

19.      The program is not a single coherent system, but a patchwork of written and unwritten policies, customs, practices, contracts, directives, databases, police-radio communications, tow files, and contractor reporting procedures.

20.      Rotational tows are one subset of this broader Vehicle Relocation Program: when Philadelphia Police are involved at an accident scene, disabled-vehicle scene, or other police-handled tow scene, the City uses its rotational tow system to select and dispatch an authorized private towing company to remove the vehicle.

21.      Although rotational tow operators are private companies, they act pursuant to City authorization, under City rules, and in coordination with Philadelphia Police, Police Radio, AutoReturn (a City of Philadelphia contractor), and other municipal systems.

22.      The City's own procedures require tow-related information to be recorded, including the vehicle's identifying information, the towing company or operator, the location from which the vehicle was removed, and the location to which the vehicle was taken. The City further

maintains tow files, dispatch systems, police-radio communications systems, and related databases for the purpose of preserving and retrieving that information.

23.     Those procedures reflect the obvious purpose of tow tracking: when a vehicle is moved by or at the direction of the City, the vehicle owner, law enforcement personnel, and other City officials must be able to determine whether the vehicle was relocated rather than stolen, where it was taken, who possesses it, and how it may be recovered.

24.     Accurate tracking and location information are essential to providing meaningful notice and a meaningful opportunity to recover property seized under City authority. Without reliable information concerning a vehicle's location, custody, and disposition, vehicle owners have no practical means of determining where their property has been taken or how it may be recovered.

25.     In practice, however, the City fails to maintain a reliable, centralized, and searchable system that accurately tracks vehicles removed through the Vehicle Relocation Program, including vehicles removed pursuant to rotational tows. Information concerning the location and custody of relocated vehicles is frequently missing, inaccurate, incomplete, or unavailable when vehicle owners attempt to locate their property.

26.     Because the City frequently lacks accurate relocation information, City personnel are often unable to determine whether a missing vehicle was relocated pursuant to municipal authority, towed by a City-authorized contractor, impounded, or actually stolen.

27.     As a result, vehicle owners are routinely left without meaningful notice concerning the fact of the tow, the location of their vehicles, the identity of the towing company, or any reliable process for locating and recovering their property. In many instances, the City is itself unable to determine where a vehicle was taken after it was removed under City authority.

28.     When the City cannot determine whether a vehicle was relocated rather than stolen, police personnel routinely investigate stolen-vehicle reports involving vehicles that were actually removed under City authority, diverting limited law-enforcement resources and creating confusion within police records systems.

29.     Because relocation information is frequently missing, inaccurate, incomplete, or unavailable, vehicle owners are often directed to search neighborhoods for their own vehicles, contact multiple towing companies, visit police districts, or report their vehicles stolen in an effort to determine what happened to property seized by the City.

30.     The City's failures also result in inaccurate law-enforcement records. Vehicles that were relocated pursuant to City authority are routinely reported and investigated as stolen vehicles, notwithstanding that the vehicles were removed through the City's own towing and relocation systems.

31.     These inaccuracies create risks for both vehicle owners and law-enforcement personnel. In prior litigation concerning the same Vehicle Relocation Program, a vehicle owner who had already located and recovered her own relocated vehicle was nevertheless subjected to a felony traffic stop and detained at gunpoint because police databases continued to identify the vehicle as stolen even after the City had been informed of the vehicle's recovery.

32.     When relocated vehicles are not properly tracked or documented, owners may continue to accrue parking tickets, penalties, storage charges, towing fees, and other costs while remaining unaware of the vehicle's location and unable to recover it.

33.     The predictable result of the City's deficient Vehicle Relocation Program is that vehicles seized under City authority become misplaced, untraceable, wrongly reported as stolen,

subjected to unnecessary police investigations, burdened with additional charges and penalties, or permanently lost to their owners.

34.    The foregoing policies, customs, practices, failures to train, failures to supervise, and deliberate indifference constitute official municipal policy within the meaning of *Monell v. Department of Social Services*, 436 U.S. 658 (1978).

**B.    Plaintiff Anthony LaBarge**

35.    Plaintiff Anthony LaBarge owned a 2012 Nissan Maxima and maintained lawful ownership and possessory interests in the vehicle.

36.    On or about July 22, 2025, Plaintiff was involved in a motor vehicle incident near 2641 Cedar Street in Philadelphia.

37.    Due to his medical condition, Plaintiff was transported from the scene by ambulance.

38.    After Plaintiff was transported from the scene, Philadelphia Police authorized a rotational tow of Plaintiff's vehicle.

39.    Pursuant to that authorization, Plaintiff's vehicle was seized and removed under City authority.

40.    When Plaintiff later attempted to locate his vehicle, he was unable to determine where it had been taken.

41.    Plaintiff contacted the Philadelphia Police Department and was provided conflicting information concerning the purported location of the vehicle.

42.    Plaintiff searched the location identified by the City but was unable to locate his vehicle.

43.     Plaintiff thereafter contacted police personnel, towing companies, and other sources in an effort to determine the vehicle's whereabouts.

44.     Despite those efforts, neither Plaintiff nor the City was able to determine where the vehicle had been taken.

45.     On or about August 4, 2025, the Philadelphia Police Department generated a Vehicle Theft Report concerning Plaintiff's vehicle.

46.     The report stated that the vehicle had been "towed by rotational tow," was "not in tow file," and that it was "unknown where vehicle currently is."

47.     The City's inability to locate Plaintiff's vehicle was not the result of any inability to determine whether the vehicle had been removed under City authority. The City expressly determined that the vehicle had been "towed by rotational tow" but was nevertheless unable to identify where the vehicle had been taken or who possessed it. The City thereby acknowledged that Plaintiff's vehicle had been removed pursuant to a City-authorized tow but that the City could not account for its whereabouts.

48.     To date, Plaintiff's vehicle has never been returned.

**C.     Harm to Plaintiff**

49.     Plaintiff's vehicle was his most valuable personal asset.

50.     Plaintiff was able to purchase the vehicle only because he received a modest inheritance following the unexpected death of his father.

51.     Since the City seized and lost the vehicle, Plaintiff has been financially unable to replace it.

52.     As a result of the loss of his vehicle, Plaintiff has suffered substantial financial hardship, loss of mobility, and disruption of his daily life.

53.     Plaintiff has been unable to reliably travel to medical appointments and has, at times, been forced to rely on remote treatment and the assistance of others for transportation.

54.     Plaintiff has also lost employment and income opportunities that required access to a vehicle and the ability to travel to job sites.

55.     More than ten months after the City authorized the tow, Plaintiff remains deprived of the use, value, and possession of his vehicle.

**D.      The City's Prior Notice of Deficiencies in the Vehicle Relocation Program**

56.     The deficiencies described herein were not isolated incidents or unknown to City officials.

57.     For years, vehicle owners have reported being unable to locate vehicles that were seized, relocated, or towed under City authority because relocation information was not properly recorded, maintained, or communicated.

58.     City personnel responsible for administering and overseeing vehicle relocations have long known that relocation information is frequently missing, inaccurate, incomplete, or unavailable when vehicle owners attempt to locate their vehicles.

59.     As a result of these deficiencies, vehicle owners are routinely directed to search surrounding neighborhoods, contact multiple towing companies, or report their vehicles stolen because the City cannot determine where the vehicles were taken.

60.     In May 2021, vehicle owners filed a class action lawsuit challenging materially similar vehicle-relocation practices maintained by the City and alleging violations of the Fourth and Fourteenth Amendments arising from the City's failure to adequately track relocated vehicles and provide meaningful notice to vehicle owners.

61.     The deficiencies alleged herein concern the same fundamental problem identified in the prior litigation: the City's inability to reliably track, document, and communicate the location of vehicles removed under City authority.

62.     During that litigation, current and former City employees testified regarding longstanding deficiencies in the City's vehicle-relocation systems, including problems involving tow records, relocation information, police-radio communications, and the ability of vehicle owners to determine the whereabouts of relocated vehicles.

63.     The litigation further revealed that vehicles relocated under City authority were frequently not reflected in reliable and accessible records and that City personnel were often unable to determine whether a missing vehicle had been relocated or stolen.

64.     The Court denied the City's motion to dismiss and later denied the City's motion for summary judgment, permitting materially similar Fourth and Fourteenth Amendment claims to proceed against the City.

65.     In February 2026, the City entered into a settlement agreement resolving those claims and agreed to implement reforms.

66.     Those reforms included measures intended to ensure that relocated vehicles could be located, that vehicle owners could obtain accurate information regarding their whereabouts, and that vehicles would not effectively disappear within the City's relocation system.

67.     Despite years of notice concerning these deficiencies, and despite its agreement to implement reforms addressing them, the City continued to operate a Vehicle Relocation Program that failed to adequately track, locate, and account for vehicles removed under City authority.

68. The constitutional violations suffered by Plaintiff were a foreseeable consequence of the City's policies, customs, practices, and deliberate indifference to known deficiencies in its Vehicle Relocation Program.

69. Upon information and belief, notwithstanding the reforms purportedly adopted following the February 2026 settlement, Defendant continues to maintain and operate deficient vehicle towing and relocation programs, including the City's rotational tow program, creating an ongoing risk that vehicles seized under City authority will become untraceable, lost, or effectively unrecoverable absent judicial intervention.

## COUNT I
**Violation of the Fourteenth Amendment**
**42 U.S.C. § 1983**

70. Plaintiff incorporates the preceding paragraphs as though fully set forth herein.

71. Plaintiff possesses constitutionally protected property interests in his vehicle.

72. Through its program of vehicle relocations, the City authorizes, directs, facilitates, and oversees the seizure, towing, relocation, impoundment, and removal of private vehicles under color of state law.

73. The City routinely deprives vehicle owners of possession of their vehicles without providing constitutionally adequate notice regarding where the vehicles have been taken, who possesses them, or how they may be recovered.

74. The City further fails to maintain adequate procedures to accurately track, document, locate, and account for vehicles removed pursuant to its Vehicle Relocation Program.

75. As a result of these deficiencies, vehicle owners are frequently unable to determine the whereabouts of vehicles seized under City authority.

11

76.     The City has long been aware of these deficiencies but has continued to maintain policies, customs, and practices that permit vehicles to be removed without adequate notice, tracking, accountability, and recovery procedures.

77.     The City's policies, customs, practices, and deliberate indifference were the moving force behind the deprivation of Plaintiff's property without due process of law.

78.     As a direct and proximate result of Defendant's conduct, Plaintiff has suffered damages.

### COUNT II
### Violation of the Fourth Amendment
### 42 U.S.C. § 1983

79.     Plaintiff incorporates the preceding paragraphs as though fully set forth herein.

80.     The City's removal and relocation of vehicles pursuant to the Vehicle Relocation Program constitutes a seizure within the meaning of the Fourth Amendment.

81.     Plaintiff's vehicle was seized under color of state law when it was removed pursuant to a City-authorized rotational tow.

82.     The City's seizure practices are unreasonable because the City fails to maintain adequate safeguards ensuring that vehicles seized under its authority are properly documented, tracked, locatable, recoverable, and returnable to their owners.

83.     The City's policies, customs, practices, and deliberate indifference foreseeably result in prolonged and, in some instances, permanent interference with vehicle owners' possessory interests.

84.     The City has long been aware of these deficiencies yet has continued, and continues, to operate its vehicle relocation program without implementing adequate safeguards to prevent vehicles from becoming untraceable or effectively lost.

12

85.     The City's policies, customs, practices, and deliberate indifference were the moving force behind the unreasonable seizure of Plaintiff's vehicle.

86.     As a direct and proximate result of Defendant's conduct, Plaintiff has suffered damages.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this Court:

A.  Declare Defendant's policies, customs, and practices unconstitutional;

B.  Enter appropriate injunctive relief requiring Defendant to establish and maintain constitutionally adequate procedures for the tracking, documentation, location, and recovery of vehicles removed pursuant to the City's rotational-tow programs;

C.  Award compensatory damages to Plaintiff;

D.  Award attorneys' fees and costs pursuant to 42 U.S.C. § 1988;

E.  Award prejudgment and postjudgment interest; and

F.  Award all other relief deemed just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: June 29, 2026

*/s/ Elias Kohn*
Elias Kohn (No. 327743)
**Elias A Kohn PLLC**
1600 Market Street, Suite 2500,
Philadelphia, PA 19103
ekohn@eliaskohn.law
(484) 564-6529
*Attorney for Plaintiff*

13